Certiorari granted by Supreme Court, October 15, 2013
Affirmed by Supreme Court, June 16, 2014

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

v.

BRUCE JAMES ABRAMSKI, JR.,

   *Defendant-Appellant.*

No. 11-4992

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Glen E. Conrad, Chief District Judge.
(7:10-cr-00068-GEC-1)

Argued: December 4, 2012

Decided: January 23, 2013

Before KING, SHEDD, and DAVIS, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Shedd and Judge Davis joined.

## COUNSEL

**ARGUED:** Rhonda Lee Overstreet, OVERSTREET SLOAN, PLLC, Bedford, Virginia, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** William H. Cleaveland, WILLIAM H. CLEAVELAND, PLC, Roanoke,

Virginia, for Appellant. Timothy J. Heaphy, United States Attorney, Donald R. Wolthuis, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia; Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

## OPINION

KING, Circuit Judge:

On November 17, 2009, in purchasing a Glock 19 handgun for his uncle in Pennsylvania, Bruce James Abramski, Jr., assured the firearms dealer in Virginia that he was the "actual buyer" of the handgun. Abramski was thereafter charged with being an illegal "straw purchaser" of the firearm. Pursuant to conditional pleas of guilty, Abramski was convicted in the Western District of Virginia on June 29, 2011, for two firearm offenses: (1) making a false statement that was material to the lawfulness of a firearm sale, in violation of 18 U.S.C. §§ 922(a)(6); and (2) making a false statement with respect to information required to be kept in the records of a licensed firearms dealer — that is, that he was the actual buyer of the firearm, when in fact he was buying it for someone else — in contravention of 18 U.S.C. § 924(a)(1)(A).

Prior to his guilty pleas, the district court denied Abramski's motions to dismiss the charges and suppress evidence. Abramski appeals from the criminal judgment, maintaining that the court erred in two respects. First, he argues that the court erred in denying his motion to dismiss the indictment because his conduct was beyond the purview of §§ 922(a)(6) and 924(a)(1)(A), in that both he and his uncle were legally entitled to purchase and own the Glock 19 handgun. Second, he contends that the court erred in denying his motion to sup-

press on the ground that inculpatory evidence had been unconstitutionally seized from his residence. As explained below, we reject Abramski's contentions of error and affirm.

I.

The facts underlying Abramski's convictions are undisputed. Prior to November 2009, Abramski, who lived in Franklin County, Virginia, and his uncle, Angel Alvarez, who resided in Pennsylvania, had several conversations concerning Alvarez's desire to obtain a Glock 19 handgun. Abramski offered to purchase a Glock 19 for Alvarez because, as a former Virginia police officer, Abramski could obtain a favorable price from a firearms dealer that catered to police officers in Collinsville, Virginia. Before purchasing the handgun, Abramski spoke with three licensed federal firearms dealers and discussed how to legally conduct such an acquisition. The dealers apparently advised Abramski, in essence, that a licensed dealer in Pennsylvania could complete the transfer to his uncle after the handgun had been purchased by Abramski in Virginia. In order to implement the transaction, Alvarez sent Abramski a check for $400 on November 15, 2009. The term "Glock 19 handgun" was written in the memo line of the check.

On November 17, 2009, Abramski went to the firearms dealer in Collinsville and purchased a Glock 19 handgun, among other items, paying for them with more than $2000 in cash. In conducting the transaction, Abramski completed Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473, which contained several questions about the purchase of firearms, to be answered by checking boxes marked "Yes" or "No." Of importance here, question 11.a. on the ATF Form 4473 stated:

> Are you the actual transferee/buyer of the firearm(s) listed on this form? *Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf*

> *of another person. If you are not the actual buyer,*
> *the dealer cannot transfer the firearm(s) to you.*

J.A. 585 (emphasis on Form 4473).[1] Abramski checked the answer "Yes" to question 11.a. Three days later, on November 20, 2009, the $400 check from Alvarez was deposited in Abramski's bank account, and the next day Abramski transferred the Glock 19 handgun to Alvarez at a licensed federal firearms dealer in Easton, Pennsylvania. At that time, Alvarez gave Abramski a receipt confirming the transfer, reflecting that Alvarez had purchased the Glock 19 handgun for $400.

Meanwhile, on November 12, 2009, a bank robbery occurred at Franklin Community Bank in Rocky Mount, Virginia. An investigation of the robbery led the FBI to suspect Abramski. Abramski had been fired from the Roanoke police department in 2007, looked similar to the masked bank robber, and was down on his luck (Abramski and his wife had recently separated and their home was in foreclosure).

Abramski was arrested in early July 2010 on state law charges relating to the bank robbery. In connection therewith, two FBI agents investigating the robbery sought and secured search warrants relating to the investigation. The first warrant was issued on July 1, 2010, for the search of a home on Highland Farm Road in Calloway, Virginia, where Abramski's parents lived, and where Abramski had moved a short time earlier. The "items to be seized" included things believed to be related to the bank robbery, such as a black square duffle bag, a black ski mask, firearms, and the catch-all phrase covering "[a]ny and all articles that appear to be relevant to the commission of a robbery." J.A. 224. The second search warrant was obtained about three weeks later, on July 19, 2010, for a home on Iron Ridge Road in Rocky Mount, Virginia, which was Abramski's marital residence. This warrant speci-

---

[1]Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

fied some of the same items as the first warrant and also included the same catch-all phrase. In executing the search warrant for the Iron Ridge Road property, agents found and seized a green Franklin Community Bank zippered bag containing the written receipt confirming the transfer of the Glock 19 handgun from Abramski to Alvarez on November 21, 2009.

The federal authorities have never charged Abramski with bank robbery, and the state bank robbery charges against him were dismissed on October 15, 2010. On November 18, 2010, however, the federal grand jury indicted Abramski for the firearms offenses underlying this appeal. A corrective superseding indictment that apparently only deleted information about the firearms dealer was returned on May 12, 2011. The superseding indictment (hereinafter the "indictment") charged Abramski, in Count One, with making the false and fictitious statement on the ATF Form 4473 that he was the actual buyer of the Glock handgun, in violation of 18 U.S.C. § 922(a)(6) and § 924 (a)(2).[2] Count Two of the indictment charged

---

[2]Count One of the indictment alleged, in relevant part, as follows:

> On or about November 17, 2009, in the Western Judicial District of Virginia, the defendant, BRUCE JAMES ABRAMSKI, JR., in connection with his acquisition of a firearm, a Glock Model 19, 9 mm semi-automatic pistol, from a federally licensed firearms dealer, did knowingly make a false and fictitious written statement to said dealer, which statement was likely to deceive said dealer, as to a fact material to the lawfulness of such sale of the said firearm to the defendant, BRUCE JAMES ABRAMSKI, JR., under chapter 44 of Title 18, in that the defendant, BRUCE JAMES ABRAMSKI, JR., represented that he was the actual buyer of the firearm, when in fact, as the defendant . . . then well knew, he was buying the firearm for another individual [in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2)].

J.A. 381.

Section 922(a)(6) provides, in relevant part,

> [It shall be unlawful] for any person in connection with the acquisition of . . . any firearm . . . knowingly to make any false or ficti-

Abramski with making a false statement with respect to information required to be kept in the records of a licensed firearms dealer, in violation of § 924(a)(1)(A).[3] In both charges, the prosecution relied on the theory that Abramski was merely a "straw purchaser" of the firearm that was immediately transferred to Alvarez.[4]

On March 10, 2011, Abramski moved to dismiss both counts of the indictment (the "first dismissal motion"), contending that, because the firearm was legally transferred to

---

tious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale[.]

18 U.S.C. § 922(a)(6). Section 924(a)(2) of Title 18 provides for punishment of a person who has violated § 922(a)(6) by both fine and imprisonment.

[3]Count Two of the indictment alleged, in relevant part, as follows:

BRUCE JAMES ABRAMSKI, JR., knowingly made a false statement and representation in connection with his acquisition of a firearm, to a federally licensed firearms dealer, with respect to information required by the provisions of Chapter 44 of Title 18, United States Code, to be kept in the records of Town Police Supply, in that [he] represented that he was the actual buyer of the firearm, when in fact, as the defendant, BRUCE JAMES ABRAMSKI, JR., then well knew, he was buying the firearm for another individual [in violation of 18 U.S.C. § 924(a)(1)(A)].

J.A. 382.

Section 924(a)(1)(A) provides, in relevant part,

[It shall be unlawful to] knowingly make[ ] any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter[.]

18 U.S.C. § 924(a)(1)(A).

[4]A "straw purchase" of a firearm has been described as a sale where the individual making the purchase represents himself to be the actual buyer, but is actually the agent of another person who will receive possession of the firearm. *See United States v. Nelson*, 221 F.3d 1206, 1208-09 (11th Cir. 2000).

Alvarez and Abramski made no material misrepresentations to the Virginia firearms dealer, the firearms statutes were never intended to punish his conduct. Also on March 10, 2011, Abramski moved to suppress the receipt found in the money bag in his home, arguing that its seizure was unconstitutional under the Fourth Amendment.[5] The district court denied both these motions from the bench on March 14, 2011. *See* J.A. 276, 310-11. The court ruled, first of all, that 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A) were violated when a false or fictitious statement is made on an ATF Form 4473, and, second, that the search warrant for Abramski's home was amply supported by probable cause. In any event, according to the court, seizure of the receipt was proper under the good faith exception to the exclusionary rule.

On April 18, 2011, after the court had denied his first dismissal motion and his initial motion to suppress, Abramski filed a second motion to dismiss the indictment (the "second dismissal motion"). He therein contended that question 11.a. on the ATF Form 4473 is not required by law (but was created by the ATF) and that, inasmuch as the ATF itself decided that the "actual buyer" of a firearm must be ascertained at the time of acquisition, the ATF had failed to comply with the notice and comment procedures required by the Administrative Procedure Act. After conducting a hearing on the second dismissal motion on April 22, 2011, the district court rejected that motion by a published decision filed on April 25, 2011. *See United States v. Abramski*, 778 F.Supp.2d 678, 680 (W. D. Va. 2011) (determining that disclosure of actual firearm purchaser is required by law). Notably, Abramski does not

---

[5]In his March 10, 2011, motion to suppress, Abramski incorrectly asserted that the receipt had been seized during execution of the search warrant for the Highland Farm Road property. *See* J.A. 220-21. During the March 14, 2011, court hearing, however, Abramski orally amended his motion to suppress to challenge the constitutionality of the second warrant, the one dedicated to the Iron Ridge Road property, where the receipt was actually seized. *See id.* at 261.

appeal the court's denial of the second dismissal motion.[6] On June 27, 2011, Abramski filed a second motion to suppress, asserting that, after the denial of his first motion to suppress, he discovered evidence that undermined the credibility of a witness who had provided information concerning the search warrants. *See* J.A. 385. The court denied this suppression motion from the bench following an evidentiary hearing conducted on June 27, 2011, and the second motion to suppress is not relevant to this appeal. *See* J.A. 514.

On June 29, 2011, pursuant to a plea agreement with the United States Attorney, Abramski entered conditional guilty pleas, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, to both charges in the indictment.[7] On October 3, 2011, the court sentenced Abramski to five years of probation on each offense, to run concurrently. Abramski thereafter filed a timely notice of appeal.

## II.

We review de novo legal issues relating to statutory construction. *United States v. Broncheau*, 645 F.3d 676, 683 (4th

---

[6]From our assessment of the briefs, the government appears to consider the district court's denial of the second dismissal motion to be a subject of this appeal. *See* Br. of Appellee 6 (citing district court's April 25, 2011, decision denying second dismissal motion). We emphasize, however, that Abramski has, on the dismissal point, only appealed the denial of his first dismissal motion, which was disposed of from the bench on March 14, 2011. *See* Br. of Appellant 3 (recognizing that Abramski's second dismissal motion was "based upon administrative deficiencies," and was denied, and advising that "Abramski does not raise this issue on appeal").

[7]Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides, in pertinent part, that:

> With the consent of the court and the government, a defendant may enter a conditional plea of guilty[,] reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.

Fed. R. Crim. P. 11(a)(2).

Cir. 2011). In evaluating a district court's denial of a motion to suppress evidence, we review the court's factual findings for clear error and its legal determinations de novo. *United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011). In evaluating a probable cause issue with respect to a search warrant, we assess whether the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

III.

We must first address a potential procedural defect that could impact our jurisdiction in this appeal. This court has recognized that, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, the "'direct review of an adverse ruling on a pretrial motion is available only if the defendant expressly preserves that right by entering a conditional guilty plea.'" *See United States v. Bundy*, 392 F.3d 641, 645 (4th Cir. 2004) (quoting *United States v. Wiggins*, 905 F.2d 51, 52 (4th Cir. 1990). Indeed, we have observed that, "[a]bsent a valid conditional guilty plea, we will dismiss a defendant's appeal from an adverse pretrial ruling on a non-jurisdictional issue." *Bundy*, 392 F.3d at 645.

In order for a defendant to pursue an appeal after a Rule 11(a)(2) conditional guilty plea, the relevant agreement must be in writing and must identify the specific pretrial rulings that the defendant intends to appeal. These requirements serve to "document that a particular plea was in fact conditional, and . . . identify precisely what pretrial issues have been preserved for appellate review." Fed. R. Crim. P. 11 advisory committee's note. As we have explained, the "conditions must be expressly described in writing, or at least so clearly shown on the record that there is no doubt that a conditional plea was agreed to." *Bundy*, 392 F.3d at 645.

Abramski's plea agreement identifies only one adverse ruling that he intends to appeal, and that ruling was made on

June 28, 2011, the day prior to his guilty pleas. The plea agreement describes the conditional nature of his guilty pleas as follows:

> I understand that the United States consents to my making of a conditional plea of guilty in this case in accordance with Rule 11(a)(2) of the Federal Rules of Criminal Procedure. I reserve the right to appeal any and all adverse rulings of the court to date, to specifically include the court's *oral* ruling *at a charge conference in chambers yesterday, June 28,* that the subsequent legal transfer of the firearm in question from the defendant Abramski to his uncle Angel "Danny" Alvarez, in Pennsylvania, does not negate the illegality of the defendant's acts in acquiring the firearm from a federally licensed firearm dealer in Virginia.

J.A. 575 (handwritten additions emphasized). Although the issue resolved by the first dismissal motion is fairly framed in the plea agreement, the agreement misidentifies the ruling at the June 28 charge conference, rather than the court's denial of the first dismissal motion, as the issue sought to be appealed. Perhaps more significantly, an appeal of the suppression rulings is not mentioned in the plea agreement.

During the plea hearing, the issues reserved for appeal were not specified on the record, although the district court and the prosecutors briefly discussed alterations of the plea agreement, presumably for the purpose of specifying issues that could be appealed. The court suggested the following:

> if it makes it any simpler, why don't you just change [the conditional plea] to read that the defendant reserves the right to appeal all pretrial legal rulings that the Court has made? Why is it necessary that we have more complicated language? Couldn't you just agree to that?

J.A. 520. In response, the government agreed to the court's suggestion. Based on this dialogue, it is evident that the parties anticipated that the defendant could appeal court rulings other than the single one specified in the plea agreement. Rule 11(a)(2) and our precedent are clear, however, that the issues to be appealed after a conditional guilty plea should be specified in writing, or, at the very least, clearly stated on the record. Nevertheless, because the court and the government orally agreed in broad terms to Abramski's conditional pleas, we are satisfied to address the merits of his appeal on the first dismissal motion and the first motion to suppress. Accordingly, we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## A.

### 1.

Abramski first contends that the district court erred in denying his motion to dismiss the charges in the indictment, and in ruling that Abramski's purchase of the Glock 19 handgun constituted a straw purchase that violated 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A). Abramski maintains that, because he and Alvarez were both legally entitled to purchase such a firearm, he was not a "straw purchaser" and his "Yes" answer on the ATF Form 4473 — representing that he was the "actual buyer" thereof — was not material and was never intended to be punished by the Gun Control Act of 1968, or by §§ 922(a)(6) or 924(a)(1)(A). Indeed, Abramski asserts that Congress's intent in enacting those statutes was "to make it possible to keep firearms out of the hands of those not legally entitled to possess them." Br. of Appellant 12. Under Abramski's theory, he could only be prosecuted for his Virginia acquisition of the Glock 19 handgun if Alvarez had been ineligible to possess a firearm, e.g., a convicted felon, thereby rendering the "actual buyer" question on the ATF Form 4473 "material to the lawfulness of the sale." *See* 18 U.S.C. § 922(a)(6). On the legal proposition pursued by Abramski, there appears to be a split in the courts of appeals. At least

three of our sister circuits have heretofore addressed the issue, and one of them seems to agree with Abramski.

In support of his position, Abramski relies on the Fifth Circuit's decision in *United States v. Polk*, 118 F.3d 286 (5th Cir. 1997). In that case, the court of appeals assessed whether § 922(a)(6) liability attached where "the true purchaser [here, Alvarez] can lawfully purchase a firearm directly." *Id.* at 295. The Fifth Circuit determined that it did not, ruling that

> the plain language of the statute compels the conclusion . . . that § 922(a)(6) criminalizes false statements that are intended to deceive federal firearms dealers with respect to facts material to the "*lawfulness of the sale*" of firearms. . . . Thus, if the true purchaser can lawfully purchase a firearm directly, § 922(a)(6) liability (under a "straw purchase" theory) does not attach.

*Id.* (emphasis in original).

Put simply, we are unable to agree with *Polk*. It is clear to us that the prohibition against false and fictitious statements in § 922(a)(6) is not limited to those persons who are prohibited from buying or possessing a firearm. To establish a violation of § 922(a)(6), the prosecution is obligated to prove four elements: "(1) the defendant knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011). The straw purchaser issue goes directly to the third of these essential elements — materiality.

Abramski's contention that § 922(a)(6) does not apply to a firearm transaction involving two eligible purchasers was recently rejected by the Sixth Circuit in *United States v. Morales*, 687 F.3d 697 (6th Cir. 2012). In that case, the court

also took issue with the reasoning of *Polk* and agreed with the Eleventh Circuit's decision in *United States v. Frazier*, 605 F.3d 1271, 1280 (11th Cir. 2010). In *Frazier*, the court of appeals had likewise rejected *Polk*, explaining its decision in language that we readily approve:

> [t]o say that the identity of the actual purchaser is material to the lawfulness of one sale but not to another, is counterintuitive. Although *Polk* focused on whether one's identity affected the lawfulness of a sale under § 922(a)(6), we focus on whether one's identity is a fact that is material to the lawfulness of a sale. *The identity of the purchaser is a constant that is always material to the lawfulness of the purchase of a firearm under § 922(a)(6).* Thus, it can be reasoned that although the lawfulness of a sale may change depending on the identity of the purchaser, the fact that the identity of the purchaser is material to the lawfulness of the sale does not.

*Id.* (emphasis added).

In denying Abramski's first dismissal motion from the bench on March 14, 2011, the court relied on the *Frazier* case, expressing concern that Abramski's theory "creates an extra element in the prosecution of the offense" in that the government would have to "prove that the middleman, in this case [Abramski], knew that a subsequent purchaser was a prohibited person." J.A. 266. The court rejected that theory, ruling that "both counts of the indictment are legally sound. It seems to me that, if the government is able to prove what the grand jury has alleged in the indictment, that the defendant would be in violation of these two statutes." J.A. 276. In sum, we are satisfied that the Sixth and Eleventh Circuits, as well as the district court, correctly and properly ruled that the identity of the actual purchaser of a firearm is a constant that is always material to the lawfulness of a firearm acquisition under § 922(a)(6).

The ATF Form 4473, as completed and signed by Abramski, warned him — in bold type — that he was not the actual buyer of the Glock 19 handgun if he was buying it for someone else. And the undisputed facts show that Abramski's transfer of the Glock 19 to Alvarez was not an afterthought. On this record, that transfer was a carefully calculated event — indeed, it was the sole reason for Abramski's purchase of the Glock 19 handgun. Because the identity of the actual purchaser of the handgun was material to the lawfulness of its acquisition by Abramski on November 17, 2009, he made a false and fictitious statement to the licensed dealer when he answered "Yes" to question 11.a. on the ATF Form 4473, assuring the dealer that he was the actual buyer.

2.

Turning to Count Two, § 924(a)(1)(A) of Title 18 criminalizes "any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." 18 U.S.C. § 924(a)(1)(A). To establish a violation of § 924(a)(1)(A), the government must prove that: (1) the dealer was a federally licensed firearms dealer at the time the offense occurred; (2) the defendant made a false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of its falsity. This statutory provision does not require that the falsehood on the ATF Form 4473 relate to the lawfulness of the firearm acquisition itself. Although Abramski argues that his "Yes" answer to question 11.a. on the Form 4473 was not material to the recordkeeping requirements of § 924(a)(1)(A), the plain statutory language is unambiguous, and it does not require a showing of materiality. *See United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012) ("the text of § 924(a)(1)(A) unambiguously describes which false statements and representations it prohibits — simply those that are made with respect to information that is required to be kept by federally licensed firearms

dealers"); *United States v. Sullivan*, 459 F.2d 993, 994 (8th Cir. 1972) ("While a violation of 18 U.S.C.A. § 922(a)(6) expressly requires a showing of materiality no such expression is found in § 924(a).").

3.

In sum, the assertion that Abramski was the actual buyer of the Glock 19 handgun was a false and fictitious answer to question 11.a. of the ATF Form 4473, and that false statement was material to the lawfulness of the Virginia sale of the handgun. Moreover, the identity of the actual purchaser of the Glock 19 handgun was a fact required to be maintained by the Virginia firearms dealer that sold the firearm. By virtue of the bold-print warning on question 11.a. of the ATF Form 4473, Abramski was on notice that he was not the actual buyer of the handgun if he was purchasing it for someone else. Accordingly, the district court properly denied Abramski's motion to dismiss both charges of the indictment.

B.

Abramski next contends that the second search warrant (relating to the Iron Ridge Road property), was defectively issued and not supported by probable cause. As a result, he maintains that the agents' seizure of the receipt concerning his transaction with Alvarez from the Iron Ridge Road residence exceeded the scope of that warrant.

As spelled out above, the FBI agents executed two search warrants in their robbery investigation of Abramski. They first searched his parents' home on Highland Farm Road in Calloway, and the results of that search led them, at least in part, to also search Abramski's marital home on Iron Ridge Road in Rocky Mount. Abramski argues on appeal, first, that the affidavit for the search warrant for the Iron Ridge Road property was legally insufficient. Additionally, Abramski contends that execution of the search warrant for the Iron Ridge

Road property contravened the warrant's directives, resulting in an unconstitutional seizure of the receipt for Abramski's transfer of the Glock 19 handgun to Alvarez.

1.

The affidavit supporting the search warrant for the Highland Farm Road property included information about what the bank robber was wearing, what he carried, and the vehicle he was driving (a blue Ford Explorer). The affidavit shows that one of the bank tellers picked Abramski's picture from a photo lineup as a "suspicious white male who visited the bank" several days before the robbery. J.A. 230. The affidavit explained that when Abramski made his purchase of the Glock 19 handgun at Town Police Supply, he paid in cash from a green zippered money pouch with white lettering. It also demonstrated that Abramski had limited financial resources and had been discharged by the Roanoke police department because he was believed to have stolen money during an investigation. Among other details, the affidavit revealed that Abramski had tested a green Ford Explorer on the day of the robbery.

During the search on Highland Farm Road, Abramski's father told the officers that Abramski had only been living there for about a week. The affidavit supporting the search warrant for the Iron Ridge Road property included information that Abramski may have left his belongings at that residence. The affidavit explained that the agents had already seized inculpatory evidence in the Highland Farm Road search, including a "green zippered money pouch," and specified that the application for the Iron Ridge Road warrant "does not seek authority to seize these items." Nevertheless, one of the agents conducting the search at Iron Ridge Road found an additional green zippered money bag from Franklin Community Bank. The receipt for the transfer to Alvarez of the Glock 19 handgun was found and seized from inside that bag.

Following the suppression hearing conducted on March 14, 2011, the district court ruled from the bench that "both warrants were valid and that the items seized pursuant to those search warrants are properly admitted." J.A. 310. The court then concluded that "[c]learly there's probable cause for both search warrants."[8] *Id.*

2.

A judicial officer's determination of probable cause is entitled to "great deference" by a reviewing court. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). "The probable cause standard 'is not defined by bright lines and rigid boundaries' but 'allows a [judicial officer] to review the facts and circumstances as a whole and make a common sense determination' whether there is a fair probability that evidence of a crime will be found." *United States v. Wellman*, 663 F.3d 224, 228 (4th Cir. 2011) (quoting *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005)).

The prosecution maintains that the district court's suppression ruling must be affirmed, arguing that the "catch-all" clause in the search warrant for the Iron Ridge Road property required seizure of the receipt. It asserts that the green Franklin Community Bank money bag fell within that clause, as did the handgun receipt, because the officers then believed that Abramski had robbed the bank with a Glock handgun. The United States also contends that, in any event, the green bag was in plain view, and that the officers were entitled to seize it because its incriminating character was readily apparent. The prosecutors finally argue that the good faith exception applies, even if the search warrant was based on stale evidence and seizure of the green bag was somehow improper.

---

[8]Finally, in the alternative, the court determined that, "even if the warrants were too broad or somewhat stale, I think that the officers were entitled to, in good faith, rely on the issuance of the warrants in conducting the searches. So even if the probable cause is somewhat weak, I think good faith protects the outcome of the searches." *Id.* at 310-11.

a.

First and foremost, it is clear to us that the Iron Ridge Road search warrant was supported by probable cause. The supporting affidavit for that warrant connected Abramski to the Rocky Mount bank robbery in several ways:

- Abramski was flagged as a suspicious customer at the bank just a few days before the robbery;

- He was having financial difficulties;

- He had been fired by the police department for allegedly stealing money;

- He was about the same height as the robber;

- Abramski was seen wearing a watch and jacket similar to those worn by the robber;

- He had tested a green Ford Explorer on the day of the robbery, and the witnesses asserted that the robber made his getaway in a blue Ford Explorer; and

- Abramski had purchased firearms with a large amount of cash after the bank robbery.

In these circumstances, there was a substantial basis for the magistrate judge to conclude that probable cause existed for the search of Abramski's residence on Iron Ridge Road.

b.

Finally, we reject Abramski's challenge to the scope of the search warrant for the Iron Ridge Road residence. The agents were then investigating the robbery of Franklin Community Bank, which had been carried out with a firearm similar to a

Glock 19 handgun. When the agents discovered the green zippered bag bearing the Franklin Community Bank logo, and when they found inside that bag the receipt for Alvarez's purchase of the Glock 19 handgun, such evidence had to be seized. In these circumstances, the Iron Ridge Road warrant was properly issued, and the agents' seizure of the receipt was not unconstitutional. The district court therefore did not err in declining to suppress that evidence.[9]

## IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

*AFFIRMED*

---

[9]In his reply brief, Abramski asserts that neither of the affidavits supporting the search warrant demonstrates that the agents believed the items sought would be found at Abramski's residence seven months after the robbery. Rep. Br. of Appellant 5. Inasmuch as this is a staleness argument concerning the timeliness of the warrants, we need not address it, in that it was abandoned by not being raised in Abramski's opening brief on appeal. *See United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (recognizing that "contentions not raised in the argument section of the opening brief are abandoned").