**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-4300**
_____

UNITED STATES OF AMERICA,

        Plaintiff – Appellant,

    v.

STEVEN NICHOLAS FULTON,

        Defendant – Appellee.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Terrence W. Boyle, District Judge.  (4:23-cr-00048-BO-BM-1)

_____

Argued:  December 11, 2024                      Decided:  May 6, 2025

_____

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

_____

Reversed and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge Agee and Judge Quattlebaum joined.

_____

**ARGUED:**  Katherine Simpson Englander, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  Jaclyn L. Tarlton, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

_____

RUSHING, Circuit Judge:

A jury convicted Steven Fulton of knowingly making a false statement in connection with the attempted acquisition of a firearm. At trial, the Government introduced evidence that, on a background check form at a gun shop in North Carolina, Fulton denied having any felony convictions, despite having a prior felony conviction in New Jersey. The district court, however, overturned the jury's verdict and entered a judgment of acquittal because the Government did not present evidence to the jury demonstrating that Fulton's New Jersey offense was punishable by more than a year in prison. In the event this Court disagreed with that decision, the district court conditionally granted Fulton a new trial. The district court erred in both respects. We reverse and remand with instructions to reinstate the jury's verdict.

I.

To purchase a firearm from a federally licensed dealer, an individual must complete a form created by the Bureau of Alcohol, Tobacco, and Firearms (ATF) to facilitate a background check through the National Instant Criminal Background Check System (NICS). One question on the ATF form asks whether the prospective purchaser has been convicted of a felony or any other crime punishable by more than one year in prison. If the individual marks "Yes" in response to that question, the dealer should not sell the person a firearm and need not even enter his information in the NICS. If the prospective purchaser marks "No," indicating that he has not been convicted of a felony, the dealer enters his information into the system and awaits the result of the instant background check. The NICS then generates one of four possible responses: "Proceed," "Delayed," "Denied,"

2

or "Canceled." If the system produces a "Denied" response, the dealer may not sell the individual a firearm. The NICS does not inform the dealer of the reason for the denial.

Between January and August 2023, Fulton attempted to buy guns from federally licensed firearm dealers eleven times. He tried five different stores and used a different sales associate for every repeat visit to the same store. Each time, he completed the ATF form and marked "No" in response to question 21(e), which asks "Have you ever been convicted in any court . . . of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" Each time the NICS returned a "Denied" response and Fulton was unable to complete his purchase.

Fulton's repeated attempts to buy firearms caught the ATF's attention. So, after Fulton's eighth attempt, ATF agent Daryl Cato sent an officer with the Greene County Sheriff's Office to Fulton's residence on June 23, 2023. While the officer was there, Agent Cato called the officer's phone and spoke with Fulton. Agent Cato told Fulton that he was calling because Fulton had attempted to purchase a firearm while being a prohibited person and that Fulton was prohibited from buying a gun "because he had a felony out of New Jersey." J.A. 119.

Over the next few weeks, Fulton attempted to purchase firearms two more times. Agent Cato then personally visited Fulton at his residence on July 11, 2023. Agent Cato instructed Fulton to stop trying to buy firearms because he was prohibited from doing so as a felon. Agent Cato would later testify regarding this interaction that Fulton "seem[ed] to understand that he was a convicted felon." J.A. 121. Fulton responded that he had a

3

meeting scheduled with the government to clear things up. Before leaving, Agent Cato warned Fulton that he could be prosecuted if he tried to buy a gun again.

On August 7, 2023, Fulton attempted to purchase a firearm for the eleventh time. He again completed the ATF form and marked that he had not been convicted of a felony. The sales associate submitted his form to the NICS, and the response was, again, "Denied."

Based on the August 7 attempted purchase, the Government charged Fulton with one count of knowingly making a false statement in connection with the attempted acquisition of a firearm that was material to the lawfulness of the sale, in violation of 18 U.S.C. §§ 922(a)(6) and 924. Fulton pleaded not guilty and proceeded to trial.

At trial, the Government introduced a certified copy of Fulton's 2007 criminal judgment from New Jersey. In addition to stating Fulton's name and date of birth, the judgment identifies the offense of conviction as "Unlawful Possession of a Weapon-Handgun," categorizes it as a third-degree offense, and lists the statute of conviction: New Jersey Statutes § 2C:39-5(b). The judgment reflects that Fulton received credit for thirteen days spent in custody and was sentenced to two years' probation. The judgment does not include the word "felony" or identify the statutory penalty range for the offense.

The Government called various witnesses, including Agent Cato, to establish the facts described above. Agent Cato also testified that he was familiar with Fulton's criminal history, having reviewed it before he contacted Fulton for the first time in June 2023. While examining the New Jersey criminal judgment, Agent Cato testified it reflected that Fulton "was convicted of a felony" in "[t]he third degree." J.A. 123. When the Government asked how many years a third-degree felony is punishable by, defense counsel objected that

4

Agent Cato was "not qualified as a legal scholar of [New] Jersey law." J.A. 123. The district court sustained the objection and did not allow Agent Cato to testify about the applicable penalties.

After the Government rested, Fulton moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Defense counsel argued that the Government had failed to prove Fulton made a false statement because its evidence was insufficient to show Fulton's New Jersey conviction was, in fact, a felony. Counsel further argued that the Government had not provided enough evidence for the jury to conclude that Fulton knew he was a felon.

The Government countered that the New Jersey conviction was a felony as a matter of law and cited the relevant New Jersey statute, which provides that Fulton's crime was punishable by up to five years in prison. *See* N.J. Stat. Ann. § 2C:43-6(a)(3). Defense counsel objected that the New Jersey statute "was never entered into evidence." J.A. 151. The Government responded, "[T]his is a legal question; it's not a factual question." J.A. 151.

Fulton rested without presenting any evidence and renewed his Rule 29 motion. The district court deferred ruling on the motion. But the district court denied the Government's request for a jury instruction that the New Jersey crime is a felony punishable by more than one year in prison, explaining, "I'm not going to do that because you didn't put that into evidence, and I'm not going to comment on evidence that was not in the case." J.A. 158. The jury found Fulton guilty.

After trial, the district court granted Fulton's pending motion for acquittal. The court held that the New Jersey criminal judgment was not proof that Fulton had committed a felony because the judgment did not define a third-degree offense, did not include the word "felony," and did not identify the maximum punishment for the offense. Further, the court reasoned, the Government had not introduced any other evidence to prove the maximum punishment for the offense, nor had it asked the district court "to take judicial notice of the statutory penalties." J.A. 252–253. Accordingly, the district court concluded that the Government had failed to present evidence from which the jury could determine that the New Jersey offense was a felony and Fulton's statement on the ATF form was therefore false.

Next, the district court ruled that, if this Court were to reverse the acquittal, a new trial would be warranted "in light of the absence of proof of Fulton's knowledge" that he was a felon. J.A. 254; *see* Fed. R. Crim. P. 29(d). The court reasoned that "a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon," and the evidence was insufficient to prove Fulton's knowledge, given the probationary sentence he received and "the absence . . . of an indication" on the criminal judgment "that the conviction was a felony or that the possible sentence could exceed one year of imprisonment." J.A. 254 (internal quotation marks omitted). Finally, the court concluded, if Fulton lacked knowledge that his statement was false, then he did not act with intent to deceive.

The Government appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

6

II.

We review the district court's grant of acquittal de novo. *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020). A judgment of acquittal is improper if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime[] beyond a reasonable doubt.'" *United States v. Rafiekian*, 991 F.3d 529, 544 (4th Cir. 2021) (*Rafiekian I*) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

To establish that Fulton violated 18 U.S.C. § 922(a)(6), the Government was required to prove he (1) knowingly made (2) a false or fictitious statement (3) that was material to the legality of the firearm transaction and (4) was intended or likely to deceive the firearms dealer. *United States v. Abramski*, 706 F.3d 307, 315 (4th Cir. 2013), *aff'd*, 573 U.S. 169 (2014). The district court's judgment of acquittal turned on the second element, the existence of a false statement. Because the allegedly false statement was that Fulton was not a felon, the Government had to prove that Fulton *was* a felon.

The Government did so. It introduced a certified criminal judgment demonstrating that Fulton pleaded guilty in 2007 to unlawful possession of a weapon, a third-degree offense, in violation of New Jersey Statutes § 2C:39-5(b). Under New Jersey law, a third-degree offense is punishable by up to five years' imprisonment. N.J. Stat. Ann. § 2C:43-6(a)(3); *see also id.* §§ 2C:43-2(b), 2C:44-1; *State v. Natale*, 878 A.2d 724, 738 n.10, 741 (N.J. 2005); *United States v. Cordero*, 632 Fed. App. 121, 122–123 (4th Cir. 2015). As Agent Cato testified without objection, that offense is a felony. Fulton marked on the ATF

7

form that he had not been convicted of a felony or any crime for which he could have been punished with more than one year of imprisonment. That statement was false.

The district court erred in holding that the Government was required to present evidence proving to the jury as a factual matter the statutory penalties for Fulton's offense. Whether a crime is punishable by more than one year in prison is a question of law for the judge to determine. *United States v. Jenkins*, 792 F.3d 931, 935 (8th Cir. 2015); *see also United States v. Broadnax*, 601 F.3d 336, 345 (5th Cir. 2010); *United States v. Flower*, 29 F.3d 530, 535 (10th Cir. 1994); *cf. United States v. Hopkins*, 310 F.3d 145, 154 (4th Cir. 2002) (reasoning that whether the defendant's prior crimes "were subject to maximum penalties of at least ten years" was a "question of law"). It is not a question of fact to be decided by the jury based on competing evidence at trial.[1] Indeed, it is untenable to put the question of applicable statutory penalties to the jury, such that this New Jersey offense could be found punishable by more than one year in prison in one case but not in another. The maximum statutory penalty for the crime is a legal question.

Because the question is legal in nature, the district court was empowered to consider whatever authorities or sources it needed to resolve it, without regard to whether such sources were admitted into evidence or subject to judicial notice. *See* Fed. R. Evid. 201(a) advisory committee's note to 1972 proposed rules ("In determining the content or

---

[1] For that reason, *United States v. Essick*, 935 F.2d 28 (4th Cir. 1991), is irrelevant. The question in *Essick* was which party bore the burden of proving a *fact* (in that case, the date of the defendant's release), which derivatively affected whether the crime in question qualified as a predicate offense for a violation of 18 U.S.C. § 922(g)(1). *See* 18 U.S.C. § 921(a)(20). In contrast, the question here is purely legal: whether a given offense is punishable by more than a year's imprisonment.

applicability of a rule of domestic law, the judge is unrestricted in his investigation and conclusion. He may reject the propositions of either party or of both parties. . . . He may make an independent search for persuasive data or rest content with what he has or what the parties present." (quoting Edmund M. Morgan, *Judicial Notice*, 57 Harv. L. Rev. 269, 270 (1944))). The close of evidence did not constrain the district court from considering the content of New Jersey law in resolving Fulton's Rule 29 motion.

In sum, the Government introduced evidence that Fulton was convicted in 2007 of unlawful possession of a handgun, a third-degree offense, in violation of New Jersey Statutes § 2C:39-5(b). As a matter of law, that offense is a felony punishable by more than one year in prison.[2] The district court therefore erred in concluding that the Government failed to present substantial evidence to prove that Fulton had been convicted of a felony such that his statement to the contrary on the ATF form was false. The judgment of acquittal was in error.

### III.

We turn next to the district court's conditional grant of a new trial. Rule 29 requires a district court that grants a judgment of acquittal after a guilty verdict to "conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1). A district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In this posture, a

---

[2] The district court erred by not delivering the Government's requested jury instruction to this effect. But that instructional error does not require a new trial in this instance because the jury nevertheless had a sufficient evidentiary basis to conclude that Fulton was a felon and that his statement to the contrary was false.

court's authority is much broader than when it is deciding a motion to acquit." *Rafiekian I*, 991 F.3d at 549 (internal quotation marks omitted). When determining whether a new trial is warranted, the district court may make a "discretionary assessment[] of the balance of the evidence," functionally sitting as a "thirteenth juror." *United States v. Rafiekian*, 68 F.4th 177, 186–187 (4th Cir. 2023) (*Rafiekian II*) (internal quotation marks omitted).

Even with this wider latitude, however, a district court may not lightly discard a jury verdict. The standard "for jettisoning a jury verdict in favor of a new trial" is "demanding," and "a 'court should exercise its discretion to grant a new trial sparingly.'" *Millender*, 970 F.3d at 531–532 (quoting *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)). A district court may grant a new trial based on the weight of the evidence only "in the rare circumstance" when "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008) (internal quotation marks omitted); *Millender*, 970 F.3d at 531 (internal quotation marks omitted); *Rafiekian II*, 68 F.4th at 186; *see also Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982) (explaining that a court may set aside a verdict and grant a new trial if "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred" (internal quotation marks omitted)).

We review the conditional grant of a new trial for abuse of discretion. *Rafiekian II*, 68 F.4th at 187. A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on faulty legal or factual premises, or reaches a decision "outside the bounds of reasonable disagreement." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185,

197–198 (4th Cir. 2022); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018); *see also Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008). Under this standard, we may not simply "substitute our judgment for the district court's." *Rafiekian II*, 68 F.4th at 187. Nonetheless, a judgment that is so "fundamentally wrong" as to be "unsupportable" rather than "merely mistaken" constitutes an abuse of discretion subject to reversal. *Nicholson*, 42 F.4th at 198 (internal quotation marks omitted); *Evans*, 514 F.3d at 322.

The district court granted a new trial because it perceived an "absence of proof of Fulton's knowledge" that he was a felon. J.A. 254. That conclusion is "unsupportable." *Evans*, 514 F.3d at 322. The Government *did* present proof of Fulton's knowledge. First, the Government introduced evidence that Fulton is a felon, and "[i]f a person is a felon, he ordinarily knows he is a felon." *Greer v. United States*, 593 U.S. 503, 508 (2021). The district court's failure to credit this evidence flows from its error in concluding, on the acquittal motion, that the Government failed to present evidence sufficient to prove that Fulton's prior conviction was a felony. As described above, that ruling was erroneous.

Second, Agent Cato testified that he personally told Fulton he was a felon, twice, in 2023 and that Fulton seemed to understand that fact. Although the district court acknowledged Agent Cato's testimony, the court never evaluated its effect on Fulton's knowledge or addressed why the court did not consider that testimony at least some "proof of Fulton's knowledge." J.A. 254. The court did not explain if or why it discounted Agent Cato's testimony, nor did the court ever weigh his testimony "with the evidence as a whole." *Rafiekian II*, 68 F.4th at 189.

11

Third, the Government presented evidence that, on ten prior occasions, with ten different sales associates, Fulton had attempted to purchase firearms and been denied because he failed the background check. That is at least circumstantial evidence that Fulton knew he was prohibited from owning a firearm. Of course, the district court observed the trial and was entitled to make its own "discretionary assessment[]" of this evidence in the overall evidentiary balance, which would command our deference. *Rafiekian II*, 68 F.4th at 187 (internal quotation marks omitted). But the court made no such assessment.

The district court focused exclusively on Fulton's 2007 sentence—two years' probation and credit for thirteen days spent in custody—and the text of the criminal judgment. As it did with the acquittal motion, the court emphasized that the judgment did not contain the word "felony" or an indication "that the possible sentence could exceed one year of imprisonment." J.A. 254. Those are legitimate considerations for assessing Fulton's knowledge of his felony status. But the court never weighed that evidence against the other evidence in the record. "[A] motion for a new trial based on the weight of the evidence invites the court to . . . evaluate the persuasiveness of the inculpatory evidence in comparison with other evidence." *Rafiekian II*, 68 F.4th at 189 (internal quotation marks and emphasis omitted). "Such a global assessment of the evidence requires the court to weigh whatever evidence it has before it." *Id.* The district court here did not engage in this global assessment. Nor did the court ever conclude that "'the evidence weigh[ed] so heavily against the verdict that it would be unjust to enter judgment.'" *Millender*, 970 F.3d at 531 (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)).

12

At bottom, the district court abused its discretion in two distinct ways. First, the court did not assess the evidence as a whole or apply the relevant standard for granting a new trial based on the weight of the evidence. Were those the only errors, we might be inclined to vacate and remand for the district court to conduct its analysis afresh. *See*, *e.g.*, *Rafiekian*, 68 F.4th at 185–186. But the district court abused its discretion in a second way, by reaching a decision "outside the bounds of reasonable disagreement." *Nicholson*, 42 F.4th at 198. Given the evidence adduced at trial—showing that Fulton had been convicted of a felony (though he received a sentence of probation), that he had attempted numerous times to purchase firearms and had been denied because he failed the background check, and that Agent Cato had twice personally told Fulton he was a felon prohibited from purchasing a gun—no reasonable jurist could conclude that the evidence "weigh[ed] so heavily against the verdict that it would be unjust to enter judgment."[3] *Rafiekian II*, 68 F.4th at 186 (internal quotation marks omitted). The jury was not required to find Fulton guilty. But it did, and the evidence amply supports its verdict. We therefore reverse the district court's conditional award of a new trial and remand for the verdict to be reinstated. *See*, *e.g.*, *Singh*, 518 F.3d at 251.

---

[3] The district court further erred by concluding, in one sentence, that the evidence also would not support a finding that Fulton completed the ATF form with intent to deceive. Evidence that Fulton falsely stated on the form that he had no felony convictions, did so knowingly, and then submitted the form to a firearms dealer in an effort to purchase a gun supports a finding of intent to deceive the dealer. *See Abramski*, 706 F.3d at 315 (observing that the false statement must be "intended to deceive or likely to deceive a firearms dealer" (internal quotation marks omitted)); *see also* 18 U.S.C. § 922(a)(6).

13

IV.

For the foregoing reasons, we reverse the district court's grant of Fulton's motion for a judgment of acquittal, reverse the conditional grant of a new trial, and remand with instructions to reinstate the jury's verdict.

*REVERSED AND REMANDED*