PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                            No. 05-4668

TERRY WAYNE STEPHENS,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CR-04-100)

Argued: December 1, 2006

Decided: April 3, 2007

Before WIDENER, SHEDD, and DUNCAN, Circuit Judges.

---

Reversed in part, and vacated and remanded with instructions by published opinion. Judge Widener wrote the opinion, in which Judge Shedd and Judge Duncan concurred.

---

## COUNSEL

**ARGUED:** Thomas Erwin Wray, Roanoke, Virginia, for Appellant. Jean Barrett Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Edward Albert Lustig, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

I.

Terry Wayne Stephens appeals his convictions, after a jury trial, of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (2000) (Count One), and one count of using, carrying, and discharging a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two). Prior to trial, Stephens pleaded guilty to one count of possession of a firearm after having been convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g) (Count Three).[1]

On appeal, Stephens argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to sustain the jury's verdict. He contends that the government presented no evidence other than his own statement to law enforcement officers to establish his connection to a drug conspiracy or any drug trafficking crime. We conclude that the evidence was insufficient to corroborate Stephens's statement and thereby establish his guilt of the crimes alleged in Counts One and Two. We therefore reverse the district court as to Counts One and Two, vacate the sentence, and remand.

II.

Stephens's indictment arose from events that occurred in Roanoke, Virginia, in the early morning of August 20, 2004. Sergeant Babb of the Roanoke Police Department was patrolling in his unmarked police car near Rutherford Avenue when he heard four to five gunshots coming from the area one street over. Babb turned in the direction of the shots and within approximately thirty seconds saw an individual, later identified as Stephens, crossing the street. As Stephens saw Babb approaching, he ran across the street and went behind a residence.

---

[1]Sephens does not contest his conviction as to Count Three in this appeal.

Babb parked his vehicle and pursued Stephens until Stephens entered a vacant house. When other officers arrived on the scene, Stephens was apprehended inside the house. After Stephens was taken into custody, Babb retraced the path of the pursuit and found a five shot revolver lying in the grass near where Babb first saw Stephens. The grass around the revolver was wet, but the top of the gun was dry. The revolver contained five fired shell casings.

Stephens was taken to the Roanoke City Jail. Special Agents Underwood and Blaise of the Bureau of Alcohol, Tobacco, and Firearms (ATF) were called to question Stephens. Stephens was advised of his *Miranda* rights and agreed to answer questions. He told the agents that a local drug dealer known as "Red" fronted him one and a half ounces of cocaine approximately two to three months before, for which Stephens was to pay $1,500. Stephens was unable to repay Red, however, because Stephens's wife consumed all the cocaine. On August 19, 2004, Stephens became aware that Red had spread word on the street that Stephens would be killed because of his failure to pay. That same evening, when Stephens drove past Red and some associates, someone in Red's group fired a shot at Stephens. Stephens later retrieved his handgun and fired the shots heard by Babb at Red's vehicle, a white Mazda, when he saw it on the street. Approximately two months after the initial statement to the agents, Stephens repeated this explanation in a proffer to the government.

At trial, Sergeant Babb and Agents Underwood and Blaise testified to the events described above. An attempt to trace the firearm identified a registered owner, but Agent Underwood was unable to contact that person, and he testified that he had no information to indicate that the gun had been stolen. Agent Underwood also testified that he was aware of a suspected drug dealer known as Red whose real name was Niron Nichols, and that Nichols in fact drove a white Mazda vehicle.

Stephens took the stand in his own defense and asserted that he had lied to the ATF agents following his arrest and in his proffer. According to his testimony, on the night of August 19, Stephens was actually sitting on the porch of his grandmother's home when an individual approached him and offered to sell a handgun for $75. Stephens paid $60 for the gun and soon after decided to test it to see whether it would fire. He went to a friend's house, walked behind the home, and

fired the gun into the air. Stephens explained that he lied to the agents about his association with Red in hopes that he would be released on bond, or perhaps released so he could provide further information as to Red's drug dealing activities. Stephens denied any connection to Red, whose real name he professed not to know, and denied that he was involved in selling drugs, or that he owed anyone money for drugs.

At the close of the government's evidence and again after the defense rested, Stephens moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. The district court denied the motion. After deliberating for thirty-five minutes, the jury found Stephens guilty as to Counts One and Two. The district court sentenced Stephens to 60 months of imprisonment on Count One, to be served concurrently with 180 months' imprisonment for Count Three, 120 months' imprisonment on Count Two to run consecutively with sentences on Counts One and Three, for a total term of imprisonment of 300 months. Stephens was also sentenced to a term of 48 months of supervised release on Counts One, Two and Three and a $300 special assessment.

### III.

On appeal, Stephens argues that the district court erred in denying his motion for a judgment of acquittal. He contends the evidence was insufficient as a matter of law to sustain the jury's verdict because the government presented no evidence other than his statement to establish his connection to a drug conspiracy or any drug trafficking crime.

A defendant challenging the sufficiency of the evidence bears a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). "[A]n appellate court's reversal of a conviction on grounds of insufficient evidence should be 'confined to cases where the prosecution's failure is clear.'" *United States v. Jones*, 735 F.2d 785, 791 (4th Cir. 1984) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). A jury's verdict for the government must be upheld on appeal "if there is substantial evidence taking the view most favorable to the government to support it." *Glasser v. United States*, 315 U.S. 60, 80 (1942). In determining whether the evidence in the record is substantial, this court views the evidence in the light most favorable to the govern-

ment, and inquires whether there is evidence "that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

Stephens contends his convictions as to Counts One and Two were impermissibly predicated on his uncorroborated statement to the ATF agents. It is beyond dispute that a criminal defendant's conviction cannot rest entirely on an uncorroborated extrajudicial confession. *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963); see *United States v. Hall*, 396 F.2d 841, 844-45 (4th Cir. 1968). In *Wong Sun*, the Court wrote that "extrinsic proof [is] sufficient which 'merely fortifies the truth of the confession, without independently establishing the crime charged.'" The Court has also held that corroborative evidence is sufficient if it "supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Opper v. United States*, 348 U.S. 84, 93 (1954).

In construing *Opper*, this court has held that "corroborating evidence need not, itself, establish every element of the offense." *United States v. Waller*, 326 F.2d 314, 315 (4th Cir. 1963). The corroborative evidence "need only tend to support the admitted fact." *Warring v. United States*, 222 F.2d 906, 911 (4th Cir. 1955).

To prove conspiracy to distribute cocaine, the government must establish that: (1) an agreement to possess cocaine with intent to distribute the substance existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy. *Burgos*, 94 F.3d at 857. To establish a violation of 18 U.S.C. § 924(c)(1), the government must prove that the defendant used or carried a firearm during and in relation to a drug trafficking crime or possessed a firearm in furtherance of a drug trafficking crime. *United States v. Lipford*, 203 F.3d 259, 265-66 (4th Cir. 2000). Sufficient proof of trafficking activity is necessary to convict under § 924(c). *United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 2002).

Our review of the evidence introduced at Stephens's trial leads us to conclude that the evidence was insufficient to corroborate his con-

fession to the ATF agents and thereby sustain the jury verdict as to Counts One and Two. Following Stephens's statement, the law enforcement follow-up investigations might have served to "fortif[y]" the truth of his confession. See *Wong Sun*, 371 U.S. at 489 (internal quotations omitted). Although Agent Underwood testified that he was aware of a suspected drug dealer who was known as "Red" and drove a white Mazda, the corroboration of these details does not establish the necessary link between Stephens and Nichols to prove that those two were engaged in a conspiracy to sell cocaine. See *Opper*, 348 U.S. at 93 (holding that corroborative evidence must "support[ ] the essential facts admitted sufficiently to justify a jury inference of their truth"). In this case, that the corroborating evidence was lacking is illustrated by the testimony of the witness Underwood, an experienced ATF agent who was on the case, familiar with the drug trade in the City of Roanoke, and knew that Red was a suspected narcotics trafficker in the City of Roanoke.

> Q: Okay. Any independent investigation of this case, have you been able to locate any connection between Red and Mr. Stephens?

> A: Nothing other than Mr. Stephens' statement. J.A. 59.

Absent corroborating evidence to establish that Stephens was engaged in the drug trade, his conviction for using a firearm in connection with a drug trafficking crime is also infirm.

Accordingly, we reverse Stephens's convictions on Counts One and Two, vacate his sentence, and remand for resentencing on Count Three, the merits of which were not appealed.

*REVERSED IN PART, AND VACATED AND REMANDED WITH INSTRUCTIONS*[2]

---

[2]The entire STATEMENT OF FACTS from the government's brief, pp.2-4, is copied here:

*STATEMENT OF FACTS*

On March 23, 2005, at the jury trial, the United States presented evidence from Law Enforcement Officers from the Roanoke City Police Department regarding their investigation of Terry Wayne Stephens. Sergeant Mac Babb testified that on the evening of August 19, 2004, and

continuing through to the early morning hours of August 20, 2004, he was on patrol in the 500 block of Rutherford Avenue when he heard what sounded to him like four or five gunshots coming from somewhere nearby. J.A. 38. When he turned onto the 500 block of Madison Avenue, he saw an individual crossing the street. J.A. 38-39. When this person saw Sergeant Babb, he began to run. J.A. 39. Sergeant Babb gave chase, and eventually located this individual hiding in a vacant house in the 600 block of Madison Avenue. J.A. 39. The person was identified as Terry Wayne Stephens. J.A. 38-40.

Sergeant Babb detained Stephens, and then proceeded to retrace his steps during the chase. Sergeant Babb found a five-shot revolver in the grass, and next to it five spent shell casings. J.A. 40-41. While the grass was wet, the revolver was dry. Thereafter, Sergeant Babb contacted the Bureau of Alcohol, Tobacco and Firearms, hereinafter "ATF," to see if the case could be pursued federally. J.A. 40-42.

ATF Special Agents J.D. Underwood and Jonathon Blais responded to the Roanoke City Jail, where they read Stephens his Miranda rights and took a statement from him after he waived his rights. J.A. 49-51. Stephens told the agents that an individual he knew as "Red" had "fronted" him one and a half ounces of powder cocaine some two to three months earlier and that he was supposed to pay "Red" back $1,500 for that cocaine. J.A. 52-53. He said he was unable to do so because his wife had snorted up all the cocaine herself. J.A. 53. Since that time, he learned that "Red" had been looking for him and had let it be known on the street that Stephens was a "dead man". J.A. 53. Stephens told the agents that since that time, he'd been trying to avoid "Red". Earlier on the evening of August 19th, Stephens said that he walked by "Red" and a group of his friends and immediately thereafter, someone from "Red's" group shot at him. He said he went home and retrieved his gun. Later that evening, he saw "Red" in his white Mazda, and shot at it, or over it into the air. J.A. 49-53,57. Agent Underwood testified that he was aware that "Red" was nickname for Nyron Nichols, and that Nichols drove a white Mazda. J.A. 53,59.

Stephens testified in his defense. He admitted that he had told the agents that he had shot at "Red", but claimed that he had lied to the agents in the hope that they would let him out on bond to cooperate. J.A. 89. He testified that what really happened was that someone sold him the gun for $60, and that he fired it to make sure it worked; that he simply fired it straight up in the air. J.A. 83-84. During cross-examination, Stephens admitted that he had met with agents and the Assistant United States Attorney, with his attorney present, during a proffer and again told the same story as he had told the agents on the night of his arrest. J.A.

94-95. He testified that he lied during his proffer session as well, and maintained that now, during the trial, he was telling the truth about what really happened. J.A. 93-95.