**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4291

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHRISTOPHER RODRIGUEZ-SORIANO, a/k/a Christopher Soriano, a/k/a Christopher Soriano-Rodriguez,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:17–cr–00197–LO–1)

Argued: January 30, 2019                          Decided: July 24, 2019

Before GREGORY, Chief Judge, RICHARDSON, Circuit Judge, and DUNCAN, Senior Circuit Judge.

Conviction reversed and remanded by published opinion. Chief Judge Gregory wrote the opinion, in which Senior Judge Duncan joined. Judge Richardson wrote a dissenting opinion.

**ARGUED:** Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. James L. Trump, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Shannon Quill, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. G. Zach Terwilliger, United States Attorney, Christopher K. Grieco, Special

Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

GREGORY, Chief Judge:

Christopher Rodriguez-Soriano was found guilty of knowingly making a false statement to a licensed firearms dealer in the acquisition of a firearm, stating that he was the actual purchaser of the firearms when he was acquiring them for another individual. He appeals the district court's exclusion of proposed expert testimony at trial, as well as denial of his motion for judgment of acquittal. Rodriguez-Soriano challenges the district court's determination that proposed expert testimony related to false confessions, excluded pursuant to Federal Rule of Evidence 702, was not reliable or relevant, and that the risk of prejudice outweighed its probative value, and thus it was also properly excluded under Federal Rule of Evidence 403. We conclude that, for the reasons stated below, we need not determine whether the expert testimony was properly excluded because the evidence introduced at trial was insufficient to independently corroborate Rodriguez-Soriano's confession. We therefore reverse the district court's judgment of conviction and remand for the entry of a judgment of acquittal.

I.

On July 25, 2015, Rodriguez-Soriano purchased two firearms, a Ruger P95 9mm pistol and a Beemiller Hi-Point C9 9mm pistol, from a Northern Virginia location of Gander Mountain Company, a licensed firearms dealer. At the time of purchase, Rodriguez-Soriano completed Bureau of Alcohol, Tobacco and Firearms ("ATF") Form 4473, "Report of Multiple Sale or Other Disposition of Pistols and Revolvers," which listed him as the purchaser of both firearms. He marked the box indicating that he was

the actual buyer of the firearms listed on the form.[1]  Gander Mountain completed another ATF-required document, a "Multiple Sale Summary," documenting that Rodriguez-Soriano purchased both firearms in a single transaction.

In November 2016, a Washington, D.C. homicide detective sought the assistance of the ATF after receiving information that one of the firearms Rodriguez-Soriano purchased was used in a homicide.  Based on this information, ATF Special Agent David Burkholder and ATF Task Force Officer Kevin McConnell interviewed Rodriguez-Soriano on two occasions about his gun purchases.[2]

Rodriguez-Soriano initially told the agents that the two firearms he purchased were stolen sometime in late 2015 and described the circumstances surrounding their theft.  According to Rodriguez-Soriano, he didn't know exactly when they were stolen, and didn't notice they were missing until mid-November.  At some point during that time period he found the closet where he kept the guns in disarray, but its condition did not alert him to the theft.  He then revealed to the agents he suspected that a friend had broken the lock on his basement door to enter and steal the guns, but he didn't

---

[1] Form 4473 includes the statement, "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you."  J.A. 178.  Rodriguez-Soriano also watched a short video on straw purchases entitled, "Don't Lie for the Other Guy."  J.A. 318.

[2] At trial, defense counsel objected to Burkholder's testimony as to what the detective revealed to him regarding the homicide.  The court overruled the objection and permitted his testimony because it was not offered for the truth of the matter, but rather to explain why the agents investigated Rodriguez-Soriano's purchase of the guns.  J.A. 192.

immediately notice the lock was broken and could not say which of his friends knew he had firearms. He later identified one, who he referred to as "D."

When asked why he purchased two guns, Rodriguez-Soriano responded that the Hi-Point pistol "kept jamming" at the shooting range, so he returned to purchase the other firearm. The agents immediately knew this statement was false because the ATF forms documenting the purchase indicated that the two firearms had been purchased in a single transaction. The agents then "pivoted," expressing doubt as to the veracity of his story. J.A. 420. The agents informed Rodriguez-Soriano that straw purchasers often say that guns they have purchased were stolen and informed him it was a crime punishable by up to five years in prison to lie to federal agents. They revealed that they knew he had purchased the guns for someone else because the person had told them so, the situation was very serious because one of the guns had been used in a homicide, and they were giving him the opportunity to "come clean." J.A. 420-21. They characterized the purchase of the gun as "minimal" compared to what had been done with it, but warned him about continuing to "go down the path" of lying about the guns being stolen. J.A. 421.

Rodriguez-Soriano then confessed to the agents that he purchased the two 9mm handguns at the request of an acquaintance named "Ron." He revealed that Ron approached him in late May 2015 about buying two handguns for him. Rodriguez-Soriano did not immediately accept Ron's offer, but when their paths crossed again, Rodriguez-Soriano told him, "I can do that favor for you." Ron gave Rodriguez-Soriano $650 to buy two guns. After the purchase, Rodriguez-Soriano met Ron and his friend,

5

"D," in the parking lot of a convenience store where Rodriguez-Soriano entered their car, showed them the guns, and left the guns on the back seat.

After Rodriguez-Soriano confessed, the agents reviewed Form 4473 with him. He admitted it was his name, information, and mark in the box indicating that he was the actual buyer of the firearms. At a follow-up interview conducted eighteen days later, Rodriguez-Soriano confirmed the statements he made in his prior interview. Rodriguez-Soriano was indicted on one count of knowingly making a false statement to a licensed firearms dealer in the acquisition of a firearm, stating that he was the actual purchaser of the firearms when he was acquiring them for another individual, in violation of 18 U.S.C. § 924(a)(1)(A).

Agent Burkholder, an ATF records management employee, and Gander Mountain's former general manager, as the representative of the licensed firearms dealer, testified for the government at trial. But the homicide detective and the men who, according to Rodriguez-Soriano's confession, gave him the cash for and took possession of the guns he purchased did not. The gun used in the homicide was not introduced into evidence. Rodriguez-Soriano did not present any evidence in response to the government's case. He instead moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to support his conviction because the only evidence of criminal activity was Rodriguez-Soriano's own uncorroborated statement to the ATF agents. The district court denied the motion, finding that "given the other evidence surrounding his confession," further corroboration was not "legally necessary" because the government produced sufficient evidence as to

6

each of the elements of the offense.  J.A. 233-34; 239.  The jury found Rodriguez-Soriano guilty of the offense charged.

This appeal followed.

## II.

This Court reviews *de novo* the district court's denial of the motion for acquittal under Federal Rule of Criminal Procedure 29.  *United States v. Jaensch*, 665 F.3d 83, 93 (4th Cir. 2001); Fed. R. Crim. P. 29.  In reviewing a challenge to the sufficiency of the evidence, an appellate court must ask whether "there is substantial evidence, taking the view most favorable to the Government, to support" the conviction.  *Glasser v. United States*, 315 U.S. 60, 80 (1942).  "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc); *see also United States v. Kasai*, 736 F. App'x 414, 415 (4th Cir. 2018) (citing *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018).  "[A]ppellate reversal on grounds of insufficient evidence . . . will be confined "to cases where the prosecution's failure is clear."  *Burgos*, 94 F.3d at 862 (citing *Burks v. United States*, 437 U.S. 1, 17 (1978); *see also United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015); *United States v. Green*, 599 F.3d 360, 367 (4th Cir.), *cert. denied*, 562 U.S. 913 (2010).  The government may rely on circumstantial evidence and inferences, but it still must prove each element of an offense beyond a reasonable doubt.  *See Burgos*, 94 F.3d at 858–59.

7

III.

Rodriguez-Soriano contends that the district court erred in denying his motion for acquittal because the evidence presented at trial was insufficient to sustain a conviction. We agree. The government presented no evidence other than Rodriguez-Soriano's uncorroborated confession that his statement to a licensed firearms dealer regarding the identity of the actual buyer of the firearms was false.

A.

Section 924(a)(1) provides in pertinent part:

> [W]hoever knowingly makes any false statement or representation with respect to the information required by [Chapter 44 of Title 18 of the United States Code] to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter . . . shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1)(A).

Section 924(a)(1)(A) prohibits individuals from knowingly making any false statement or representation with respect to the information required to be kept in the records of a federally licensed firearms dealer. It applies to "straw purchases," in which an ineligible buyer uses a "straw man" to purchase firearms. *See United States v. Nelson*, 221 F.3d 1206, 1209-10 (11th Cir. 2000) (affirming § 924(a)(1)(A) conviction of defendants who hired individuals to purchase firearms by falsely representing themselves to be the actual buyers when defendants supplied the money for the purchases and intended to possess the firearms). A false statement or representation on an ATF Form 4473 as to the identity of the actual buyer of a firearm constitutes a violation of

8

§ 924(a)(1)(A). *Nelson*, 221 F.3d at 1209–10; *United States v. Abramski*, 778 F. Supp.2d 678, 681 (W.D. Va. 2011), *aff'd*, 706 F.3d 307 (4th Cir. 2013).

To establish a violation of § 924(a)(1)(A), the government must prove: (1) the dealer was a federally licensed firearms dealer at the time the offense occurred; (2) the defendant made a false statement or representation in a record that the licensed firearm dealer was required by federal law to maintain; and (3) the defendant made the false statement with knowledge of its falsity. *United States v. Abramski*, 706 F.3d 307, 316–17 (4th Cir. 2013), *aff'd*, 573 U.S. 169 (2014). Thus, to convict Rodriguez-Soriano under this statute, it was the government's burden to prove that he falsely stated to the licensed firearms dealer that he was purchasing the firearms for himself with the knowledge that the statement was false. But the government has failed to meet its burden. Rodriguez-Soriano's confession, without additional corroborative evidence, was insufficient to find him guilty beyond a reasonable doubt.

## B.

"It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963)); *see also United States v. Stephens*, 482 F.3d 669, 672 (4th Cir. 2007) (criminal defendant's conviction cannot rest entirely on an uncorroborated extrajudicial confession). The requirement for corroboration "is rooted in 'a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend

9

beyond the words of the accused.'" *Wong Sun*, 371 U.S. at 489 (quoting *Smith v. United States*, 348 U.S. 147, 153 (1954)). This is so because "the doubt persists that the zeal of the agencies of prosecution to protect the peace . . . or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession." *Id.* at 489 (citing *Opper v. United States*, 348 U.S. 84, 89-90 (1954)). Moreover, "there can be no conviction of an accused in a criminal case upon an uncorroborated confession," where the corroboration "wholly fails to include any substantial evidence of the *corpus delicti*." *Yost v. United States*, 157 F.2d 147, 150 (4th Cir. 1946). Thus, courts require corroboration to "prevent confessions to crimes never committed and 'convictions based upon untrue confessions alone.'" *Abu Ali*, 528 F.3d at 234 (quoting *Warszower v. United States*, 312 U.S. 342, 347 (1941)). But "since this corroboration rule 'infringe[s] on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them.'" *Id.* (citing *Smith*, 348 U.S. at 153).

"Independent evidence adequately corroborates a confession if it 'supports the essential facts admitted sufficiently to justify a jury inference of their truth;' the facts admitted 'plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.'" *Abu Ali*, 528 F.3d at 235 (citing *Opper*, 348 U.S. at 93); *Stephens*, 482 F.3d at 672. The corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance. But there must be substantial independent evidence that the offense has been committed in the first instance, and that the evidence as a whole proves beyond a reasonable doubt that the

10

defendant is guilty. *Abu Ali*, 528 F.3d at 235 (citing *Smith*, 348 U.S. at 156); *Kasai*, 736 F. App'x at 415. Only after a defendant's admissions have been corroborated by sufficient independent evidence may the government "prove the offense through the statement of the accused." *Abu Ali*, 528 F.3d at 235; *Kasai*, 736 F. App'x at 415. "The government must establish each element of an offense, but may do so 'by independent evidence or corroborated admissions,' and 'one mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense through the statements of the accused.'" *Abu Ali*, 528 F.3d at 235 (citing *Smith*, 348 U.S. at 156).

## C.

Applying these legal principles and the appropriate standard of review to the case at hand, we find that the government has failed to meet its burden to prove that Rodriguez-Soriano knowingly made a false statement to the firearms dealer as to the identity of the actual buyer of the firearms. There is no corroboration demonstrating that the transaction was a straw purchase, and accordingly no substantial independent evidence that, together with the confession itself, proves Rodriguez-Soriano's guilt beyond a reasonable doubt. Neither party refutes that Rodriguez-Soriano was eligible to acquire firearms at the time he purchased them. And the ATF forms and the testimony of the representative of the licensed firearms dealer, at best, prove only that he made a facially legal purchase of two firearms. It was the government's burden to prove that Rodriguez-Soriano knowingly committed a crime by falsely stating that he was buying the guns for himself. The government contends that additional independent evidence

11

presented at trial sufficiently corroborated his confession, and this corroborating evidence, together with the confession itself, was sufficient to sustain his conviction. We disagree.

In reaching this conclusion, we find the facts in *Stephens*, 482 F.3d 669, particularly instructive. There, an officer on patrol heard four to five gunshots coming from a nearby street. He turned in the direction of the shots and within thirty seconds observed a man, later identified as Stephens, crossing the street. Stephens ran when he saw the officer, and was later apprehended inside a nearby house. The officer retraced the path of pursuit and found a revolver containing five spent shell casings lying in the grass near where he first saw Stephens. *Id.* at 671.

Upon being taken into custody, Stephens was interviewed by two ATF agents. He told them that approximately two to three months earlier, a local drug dealer known as "Red" fronted him a quantity of cocaine for which he was to pay $1,500. Stephens was unable to repay Red because his wife had consumed the cocaine. Stephens heard on the street that Red intended to kill him because he failed to pay, and later that evening, when he drove past Red and his associates, someone in the group fired a shot at him. Stephens retrieved his gun and fired the shots the officer heard at Red's vehicle, a white Mazda, when he saw it on the street. Two months after his initial statement to the agents, Stephens repeated his statement in a proffer to the government. *Id.*

But when Stephens took the stand in his own defense at trial, he testified that he had lied to the ATF agents after his arrest and in his proffer. He stated that on the night in question, he was sitting on his grandmother's porch when an individual approached

12

and offered to sell him a handgun for $75. Stephens paid $60 for the firearm, and then walked to a friend's house where he fired the gun into the air. He explained that he lied about his association with Red in hopes he would be released on bond, or released so he could provide information about Red's drug dealing activities. Stephens denied having any connection to Red, that he was involved in drug sales, or that he owed anyone for drugs. *Id.*

Stephens' motion for a judgment of acquittal was denied, *id.* at 672, and a jury found him guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and of using, carrying, and discharging a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). *Id.* at 670. But on appeal, this Court reversed, finding that the evidence was insufficient to corroborate his confession to the ATF agents and thereby establish his guilt of the offenses. This Court noted that further law enforcement investigation "might have served to fortif[y]" the truth of Stephens' confession. But the ATF agent, who was familiar with the city's drug trade and knew of a drug dealer named Red who drove a white Mazda, could not establish any connection between Stephens and Red, and his corroboration of those details from Stephens' statement did not establish the necessary link between Stephens and Red to prove the two were engaged in a conspiracy to sell cocaine. *Id.* at 673.

If *Stephens* sets the outer bounds of the corroboration rule, the evidence here is well within it. Here, the government contends that four pieces of evidence corroborate Rodriguez-Soriano's confession that he made a straw purchase: (1) the guns he purchased were no longer in his possession; (2) he lied to the agents about buying the

13

firearms in two separate transactions; (3) he made inconsistent and contradictory statements about the alleged theft of the guns; and (4) he reaffirmed his confession in a subsequent interview. The government would have us conclude that under the applicable standard of review, despite the absence of testimony from the homicide detective and the other parties involved in the alleged straw purchase, and the government's failure to introduce the gun into evidence, it still produced substantial independent evidence that, together with the evidence as a whole, was sufficient for the jury to find Rodriguez-Soriano guilty beyond a reasonable doubt. But the government's argument fails because all of the evidence the government claims corroborates Rodriguez-Soriano's confession arises from his own statements to law enforcement.

At the time Rodriguez-Soriano told the agents he no longer had the guns, Agent Burkholder had already received information, independent of Rodriguez-Soriano's statement, that the gun had been used by a third party in a homicide. But given that Agent Burkholder's testimony regarding the use of the gun to commit a murder was not offered at trial for the truth of the matter asserted, but rather was admitted solely to explain what prompted the investigation of the gun purchases, the sole evidence at trial that Rodriguez-Soriano was no longer in possession of the guns arose from Rodriguez-Soriano's statement, and therefore was not an independent corroboration of the straw purchase.

Given the limited purpose for which the jury could consider Agent Burkholder's testimony, the remaining evidence the government advances as corroborative is simply inadequate, as it does not prove that Rodriguez-Soriano knowingly made a false

14

statement. That Rodriguez-Soriano no longer possessed the firearms at the time of the interview did not itself indicate that he knowingly misrepresented he was the actual buyer. And while his later, inconsistent explanations as to why he purchased the firearms or how they were stolen may suggest that he lied to the ATF agents, they do not establish that he knowingly made a false statement at the time of purchase, as required under § 924(a)(1)(A).

The government would also have us construe Rodriguez-Soriano's statements made in his subsequent interview as a separate confession, and determine that each confession corroborates the other. But the government cannot rely on a second uncorroborated confession as independent evidence corroborating an initial one, particularly where the second does nothing to "fortif[y] the truth of the confession" by offering further corroboration that a crime was committed. *See* Stephens, 482 F.3d at 672-73. And where the only evidence of the *corpus delecti* is an uncorroborated confession, the evidence is insufficient as a matter of law. *See Yost*, 157 F.2d at 150.

The facts of this case and other cases like it where the "confessions or admissions constitute[] the only evidence linking [a defendant] to criminal conduct," demonstrate the need for the uncorroborated confession rule – "to prevent confessions to crimes never committed." *Warszower*, 312 U.S. at 347. *See Stephens*, 482 F.3d at 672 (government presented no evidence other than defendant's statement to establish his connection to a drug conspiracy). In *Stephens*, this Court noted that further investigation by law enforcement might have fortified the truth of the defendant's confession. 482 F.3d at 673. Here, it appears that the prosecutor knew the identities of potential corroborating

witnesses, yet we can only speculate as to why evidence corroborating Rodriguez-Soriano's alleged offense was not presented at his trial. But regardless of the reason, we conclude that without the necessary corroboration of the confession, the prosecution has failed to present sufficient independent evidence that a crime was committed, and where, as here, the prosecutor's failure to do so is "clear," *see Burgos*, 94 F.3d at 862, the absence of substantial independent evidence cannot sustain the jury's verdict and requires reversal. *Stephens*, 482 F.3d at 673.

IV.

For these reasons, we find that the evidence presented at trial was insufficient to support the jury's verdict. Given that the evidence was insufficient to corroborate Rodriguez-Soriano's confession, and thus insufficient to establish his guilt of the offense beyond a reasonable doubt, we decline to address Rodriguez-Soriano's claim that the district court erred in refusing to permit the expert proposed testimony regarding false confessions. We reverse Rodriguez-Soriano's conviction and remand with instructions to enter a judgment of acquittal.

*CONVICTION
REVERSED AND REMANDED*

16

RICHARDSON, Circuit Judge, dissenting:

Historically, juries have given tremendous weight to defendants' confessions when determining guilt, often considering them to be incontrovertible evidence. Juries today continue to do so. For this reason, under longstanding Supreme Court precedent, a prosecutor seeking to admit a defendant's out-of-court confession must provide evidence showing that the confession is trustworthy. But that evidence need not independently prove the "corpus delicti"—that is, the "body of the crime"—as American common law once required. Nor must it corroborate every element of the crime at issue. Rather, the prosecutor need only offer independent evidence that tends to show that the confession is trustworthy. My colleagues in the Majority rewrite this rule, reviving and expanding the old corpus delicti doctrine by demanding evidentiary proof, independent of his many admissions, that Rodriguez-Soriano violated each element of the crime. I respectfully dissent.

## I.

In the seventeenth century, the English courts established a common law rule requiring the prosecutor in a homicide case to prove the corpus delicti through evidence other than a defendant's out-of-court confession.[1] Known as the corpus delicti doctrine,

---

[1] Roman law similarly provided that a judgment could not rest just on a naked extrajudicial confession, which was considered to be *semiplena probatio* (*i.e.*, "half proof") unless "voluntarily made, in the presence of the injured party, or, if reiterated at different times in his absence, and persisted in." 1 SIMON GREENLEAF & SIMON GREENLEAF CROSWELL, A TREATISE ON THE LAW OF EVIDENCE § 217, at 278 (14th ed. 1883); *see also* Robert E. Ireton, *Confessions and Corpus Delicti*, 6 DET. L. REV. 92, 93–94 (1936).

the rule sought to ensure that a defendant would not be punished for allegedly killing someone who was actually alive but missing.[2]  To avoid this result, prosecutors seeking to prove homicide needed corroboration, and the quintessential example has always been the body of the victim.  But requiring a body in every homicide case would have led to untenable and unjust results.  So the prosecution was not always required to provide a corpse to prove the corpus delicti of a homicide.  *Captain Green's Trial*, 14 How. St. Tr. 1199, 1246 (Scot. Adm. 1705); *see also United States v. Gibert*, 25 F. Cas. 1287, 1290 (C.C.D. Mass. 1834) (Story, J.) (noting that categorically requiring a body "would amount to a universal condonation of all murders committed on the high seas").  Ultimately, English courts were cautious in adopting the corpus delicti doctrine:  some rejected it altogether, while others applied it only in murder and bigamy prosecutions.  3 WIGMORE, EVIDENCE § 2070, at 2778–79 (1904); Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. PA. L. REV. 638, 640 (1955).

Many American courts enthusiastically adopted the corpus delicti doctrine, expanding it well beyond its historical roots.  For instance, they applied it to nonviolent crimes.  *See, e.g.*, *Forte v. United States*, 94 F.2d 236 (D.C. Cir. 1937) (knowing interstate transportation of a stolen motor vehicle).  And they expanded the concept of the

---

[2] Some credit Lord Hale as the originator of the doctrine, as he wrote:  "I would never convict any person of murder or manslaughter, unless the fact were proved to be done, or at least the body found dead."  2 MATTHEW HALE, HISTORIA PLACITORUM CORONÆ: THE HISTORY OF THE PLEAS OF THE CROWN 290 (S. Emlyn ed., 1736).  Hale justified his position on two stories where purported murder victims returned to town, very much alive, after others had been executed for their "murders."  *Id.*  Both stories, however, involved prosecutions based on circumstantial evidence rather than false confessions.

"corpus delicti" to include not just the physical facts of the crime, but also criminal agency; in the example of a murder case, not only must the victim be dead, the evidence must suggest foul play as opposed to a natural or accidental death. *See id.* at 243–44.

In 1954, the Supreme Court rejected the expanding corpus delicti doctrine. *Opper v. United States*, 348 U.S. 84, 93 (1954); *see also United States v. Abu Ali*, 528 F.3d 210, 235 (4th Cir. 2008) ("[T]he Supreme Court resolved this question for federal courts by rejecting the *corpus delicti* rule . . . ."). The Court instead adopted a more limited requirement that the prosecution introduce independent evidence that "would tend to establish the trustworthiness of the [defendant's] statement." *Opper*, 348 U.S. at 93. This evidence "need not be sufficient, independent of the statements, to establish the corpus delicti." *Id.* Instead, it need only "support[] the essential facts admitted sufficiently to justify a jury inference of their truth." *Id.* Of course, the prosecution must still produce independent evidence to establish beyond a reasonable doubt any elements not addressed by the confession. *Id.* at 94.

The Court elaborated on the degree of corroboration required in *Smith v. United States*, a companion case handed down the same day as *Opper*. 348 U.S. 147 (1954). It explained that all "elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Id.* at 156. As the Supreme Court would later explain, "extrinsic proof [is] sufficient which merely fortifies the truth of the confession,

19

without independently establishing the crime charged." *Wong Sun v. United States*, 371 U.S. 471, 489 (1963).

The facts of *Opper* and *Smith* show just how tenuous this corroborating evidence can be. In *Opper*, the defendant was convicted of bribery for paying a government employee to select his stock of goggles for purchase by the Air Force. The defendant admitted to the FBI that he had handed the employee cash, but insisted it was merely a friendly loan. And the prosecution's independent evidence only proved that the defendant cashed a check for himself (corresponding to an amount he had admitted he had given to the employee), that there was contact between the defendant and the employee, and that the initial rejection of the defendant's goggles was overturned at the employee's urging. This independent evidence tended to support only circumstantially the defendant's single admission that he paid the money. The Supreme Court nonetheless held that there was "substantial independent evidence to establish directly the truthfulness of [the] petitioner's admission." *Id.* at 93–94. And the jury was therefore justified in relying on this extrajudicial admission.

The connection in *Smith* was even more attenuated. There, the defendant was accused of criminal tax evasion during a five-year period. The government's case substantially relied on one statement by the defendant describing his specific net worth at the beginning of this period—which, if proven, would show that his reported income was too low to explain his high net worth at the end of this period. The Supreme Court held that the government had sufficiently corroborated this lone admission in two independent ways.

20

First, the government had bolstered the admission through his prior tax filings, which showed only minimal income.  348 U.S. at 157.  The Court determined that those tax filings corroborated another extrajudicial statement by the defendant about his limited work history, which together adequately corroborated that the defendant had a low net worth at the beginning of the relevant period.  And the general suggestion that he had a low net worth was enough to corroborate the specific net worth statement to which the defendant had admitted.

Second, and independently, the Court in *Smith* held that the government adequately corroborated his opening net worth by presenting evidence that "tend[ed] to establish the crime of tax evasion without resort to the net worth computations."  *Id.* at 158.  The government had presented evidence that, during the five-year period, the defendant and his wife started a business that kept no financial records, opened many bank accounts, added a lot of money to those bank accounts, and made other substantial expenditures.  The Court noted that these acts "might not, of themselves, suffice to support a conviction of tax evasion without evidence of a starting point indicating a lack of funds from which these payments might have come."  *Id.* at 159.  Though these facts were only loosely related to the net-worth statement that the prosecution sought to corroborate, the Court still held that this evidence was sufficient.  *Id.*

## II.

Here Rodriguez-Soriano was charged with making a false statement about being the actual purchaser during a firearm purchase in violation of 18 U.S.C. § 924(a)(1)(A).  The elements of this crime require the defendant to (1) knowingly make a false statement

21

or representation (2) to a federal firearms licensee (3) about the information that the law requires such licensees to keep. Rodriguez-Soriano confessed to all of his conduct in committing this crime: he admitted that he had agreed to buy two guns for an acquaintance named Ron, that he bought Ruger and Hi-Point 9mm handguns in July 2015 at Gander Mountain, that he filled out and signed ATF Form 4473 when buying the handguns (stating that the guns were for himself), and that he gave the two guns to Ron right after making the purchase.

Evidence independent of his confession confirmed the *essential* facts to which Rodriguez-Soriano admitted. This independent evidence confirmed that he did in fact purchase two guns at the same time, that the guns he bought were Ruger and Hi-Point 9mm handguns, that he did so in July 2015 at Gander Mountain, and that he filled out and signed ATF Form 4473 when he bought the guns.

Nothing more is required. The independent evidence need not confirm every detail from the defendant's admissions. Rather, "independent corroboration of one part of the statement may corroborate the entire statement." *United States v. Brown*, 617 F.3d 857, 863 (6th Cir. 2010) (citing *Smith*, 348 U.S. at 156).

Indeed, we have continually acknowledged that corroborative evidence need not establish every element of a criminal offense. *United States v. Stephens*, 482 F.3d 669, 672 (4th Cir. 2007) (citing *United States v. Waller*, 326 F.2d 314, 315 (4th Cir. 1963)). An element of the crime may be proven entirely based on the defendant's confession so long as the confession is otherwise corroborated. *See United States v. Irving*, 452 F.3d 110, 118 (2d Cir. 2006) (noting that a defendant's "confession, if proven reliable, may

22

serve as the only evidence reaching the *corpus delicti*"); *United States v. Fujii*, 301 F.3d 535, 541 (7th Cir. 2002) (acknowledging that "some elements of the offense may be proven entirely on the basis of" the corroborated confession); *United States v. Gravitt*, 484 F.2d 375, 381 (5th Cir. 1973) ("If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible; and some elements of the offense may be proven entirely on the basis of a corroborated confession."); *United States v. Wilson*, 436 F.2d 122, 124 (3d Cir. 1971) ("[T]o corroborate a confession or admission, it is unnecessary for the prosecutor to introduce substantial independent evidence of each element of the offense with which the defendant is charged."). The independent evidence need only reinforce the credibility of the defendant's statement, not independently establish each element of the offense.

The Majority dismisses all of this, concluding that "[t]here is no corroboration demonstrating that the transaction was a straw purchase . . . ." Majority Op. at 11.[3] In doing so, the Majority requires corroboration of Rodriguez-Soriano's mental state (*i.e.*, that he intended to buy the guns for another person). This misconstrues the correct standard, instead describing a new rule that requires formal proof of a crime's every element. But only the essential facts of the confession must be corroborated, not every

---

[3] The Majority's language is telling: it variously complains that the corroborative evidence does not "demonstrat[e]," "prove," and "establish." Majority Op. at 11, 15. But the Supreme Court has held that the corroborative evidence need not itself "establish" anything—it is enough if it "*tends* to establish" the trustworthiness of the confession by bolstering its essential facts. *Opper*, 348 U.S. at 93 (emphasis added); *see also Warring v. United States*, 222 F.2d 906, 911 (4th Cir. 1955) (noting that "corroboration is needed only to allay suspicion of the veracity of the admission").

element of the offense. It is thus of no consequence that he engaged in "a facially legal purchase."

And even if corroboration of Rodriguez-Soriano's mental state is required, we in fact have independent corroborative facts that tend, though only weakly, to show that he did not buy the guns for himself. First, consider the simple fact that a 23-year-old simultaneously bought two inexpensive, interchangeable handguns for over $500. Next, Rodriguez-Soriano did not produce the guns when the agents arrived to ask about them—tending to show that he no longer had them, and accordingly, that he never intended to keep them in the first place. The Majority contends that the prosecution needed Rodriguez-Soriano's admission to prove this fact. Not so. It is an objective fact that agents visited Rodriguez-Soriano and that he did not produce the guns. His admission was unnecessary to prove that point. *Cf. Smith*, 348 U.S. at 159 (finding a defendant's lack of business records to be corroborative evidence of the crime of tax evasion). Finally, ATF Form 4473 indirectly corroborates his confession by tending to show the story he first gave the agents—that a friend broke into his house and stole the guns—was false. That is because the form shows that he bought both guns together, something he initially lied about but later admitted. *Cf. id.* at 157–59 (using a corroborated admission to corroborate another admission).

Despite all this, the Majority suggests that *United States v. Stephens* compels us to overturn the jury's guilty verdict. *Stephens* involved a man who confessed to buying drugs and shooting at a certain drug dealer's car after being arrested near where several gunshots were heard. 482 F.3d at 671. But at trial, the man testified that he had lied to

24

law enforcement about shooting at the drug dealer, and instead that he had merely fired a gun into the air to test it. He was convicted both of conspiracy to distribute cocaine and of using a firearm in relation to a drug trafficking crime. This Court reversed his convictions, reasoning that there was inadequate corroborative evidence linking him to the drug trade (or linking him to the drug dealer specifically): there was only evidence connecting him to the firearm. *Id.* at 673. We concluded that the evidence that the man fired a gun outside did not sufficiently support the essential facts of the drug crimes for which he was convicted. And as such, we found his confession to be uncorroborated. But while the prosecution in *Stephens* provided practically no evidence to help establish the trustworthiness of the man's initial confession, and no evidence at all that he was involved in the drug trade, the prosecution here provided independent evidence that corroborated all of Rodriguez-Soriano's conduct in committing the crime: the only thing the prosecution purportedly failed to corroborate was his mental state when he filled out ATF Form 4473. This corroborating evidence was more than enough to help establish his candor, and accordingly, his confessions properly supported his conviction.

*  *  *

A defendant may not be convicted based solely on an uncorroborated confession. But the law does not require a prosecutor to convict a defendant before a jury may hear his confession. Instead, the law takes a middle ground between these two extremes, merely requiring evidence that tends to establish the trustworthiness of the confession. This rule helps to ensure that defendants are not convicted based on false confessions, while also not hampering the search for truth with an unreasonable evidentiary burden.

25

As the evidence offered here adequately corroborated Rodriguez-Soriano's confessions, I respectfully dissent.