**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4351**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JULIO RODRIGUEZ-DIAZ,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Dever III, District Judge. (5:19-cr-00111-D-4)

Submitted: September 29, 2021                   Decided: December 20, 2021

Before WYNN and RUSHING, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Robert L. Cooper, COOPER, DAVIS & COOPER, Fayetteville, North Carolina, for Appellant. G. Norman Acker, III, Acting United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pursuant to a narcotics task force's investigation into a drug trafficking operation ("DTO"), law enforcement conducted a traffic stop of a tractor trailer and arrested the driver, Eugenio Carlos-Alfonso, and the passenger, Julio Rodriguez-Diaz, after discovering two duffel bags full of compacted bricks of cocaine in the trailer. A federal grand jury indicted Rodriguez-Diaz on two counts of a three-count third superseding indictment: conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count 1), and possession with intent to distribute five kilograms or more of cocaine, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2. Following a jury trial, Rodriguez-Diaz was convicted on both counts. He appeals, challenging the district court's denial of his Fed. R. Crim. P. 29 motion for judgment of acquittal based on insufficiency of the evidence. We affirm.

We review de novo a district court's denial of a Rule 29 motion for a judgment of acquittal based on the sufficiency of the evidence. *United States v. Farrell*, 921 F.3d 116, 136 (4th Cir. 2019). "A jury's guilty verdict must be upheld if, viewing the evidence in the light most favorable to the [G]overnment, substantial evidence supports it." *United States v. Haas*, 986 F.3d 467, 477 (4th Cir. 2021) (internal quotation marks omitted), *petition for cert. docketed*, No. 21-5283 (U.S. Aug. 3, 2021). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez-Soriano*, 931 F.3d 281, 286 (4th Cir. 2019) (alteration in original). "[A]ssessing the credibility of witnesses and resolving contradictory testimony, weighing evidence, and

2

drawing reasonable inferences from basic facts to ultimate facts is solely the responsibility of the jury." *United States v. Denton*, 944 F.3d 170, 179 (4th Cir. 2019) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2585 (2020). "A defendant who brings a sufficiency challenge bears a heavy burden, as appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (internal quotation marks omitted).

Viewed in the light most favorable to the Government, the following evidence was presented at trial. In 2018, law enforcement began investigating a DTO that recruited tractor trailer drivers hauling legitimate cargo to transport cocaine from Texas to North Carolina on their way to their final destinations. After collecting their legitimate freight, these couriers would drive to a mechanic shop in Edinburg, Texas, where someone would load cocaine into their trucks. The trucks were rigged so that the rear trailer doors could be opened without damaging the security seal.

As a courier drove north, he called a number provided to him for instructions on where to stop in North Carolina. Carlos Ruiz-Diaz, also known as Angel Castrejon, was one such contact. A "safeguard" for the organization would scout out the area to offload the cocaine—usually a truck stop—and would meet the courier at that location. The safeguard would bypass the security seal on the tractor trailers, retrieve the cocaine, and then deliver it to its intended recipient. Meanwhile, the courier would go into the truck stop and wait until the safeguard called to say the truck was ready. An individual known to law enforcement as "Pititi" acted as a safeguard for the DTO. Couriers also picked up

3

cash in North Carolina and delivered it to Texas. The DTO used duffel bags for transporting both drugs and money.

Carlos-Alfonso picked up Rodriguez-Diaz in McAllen, Texas, on December 6, 2018. Photographs from Rodriguez-Diaz's cell phone taken near McAllen on the afternoon of December 6, 2018, showed the interior of a tractor trailer loaded with boxes of Ivan Big Tree brand aloe vera leaves and a bill of lading for the aloe vera showing that the truck was loaded on December 6. Another photograph taken with Rodriguez-Diaz's cell phone later that evening in Edinburg, Texas, north of McAllen, showed a Love's truck stop receipt with the tractor trailer's weight. This photograph was taken at a location two minutes from the mechanic's shop where the DTO loaded trucks with cocaine.

On December 7, 2018, Carlos-Alfonso called Ruiz-Diaz/Castrejon and advised him that he was "bringing the toys."[1] (J.A. 292). They agreed to meet on December 8, in Kenly, North Carolina, but the meeting time was later moved to 6:00 a.m. or 7:00 a.m. on December 9. As Carlos-Alfonso and Rodriguez-Diaz drove north, Carlos-Alfonso had several cell phone conversations with Pititi.

Carlos-Alfonso and Rodriguez-Diaz stopped for the night of December 8 at 95 Tire and Service, a tractor trailer repair shop off I-95 Exit 71 in Harnett County, North Carolina. The task force set up surveillance around that area. Early on the morning of December 9, Carlos-Alfonso texted Pititi, expressing frustration that Pititi was late and had not answered

---

[1] Jason Corprew, a Task Force Officer for the Drug Enforcement Administration, testified that "toys" was a code word for narcotics or money.

4

his calls.  Rodriguez-Diaz also tried to reach Pititi, calling 18 times between 5:32 a.m. and 8:02 a.m.  Pititi finally called Carlos-Alfonso at 8:09 a.m.

At around 8:30 a.m., the surveillance team saw Rodriguez-Diaz leave the truck and get into a parked gold Suburban.  Charly Quintana, a mechanic at 95 Tire and Service, was in the driver's seat of the Suburban.  Officers saw Rodriguez-Diaz get out and subsequently walk to the rear of the tractor trailer; while they did not have an unobstructed view behind the trailer, they saw the top of the back door swing open.  Rodriguez-Diaz then walked from the behind the trailer toward the Suburban with a box of Ivan Big Tree aloe vera leaves.  He put the box in the back seat of the Suburban and returned to the tractor trailer.

A short time later, officers conducted a traffic stop on the tractor trailer as it headed north on I-95.  Carlos-Alfonso consented to a search of the truck, and, after a narcotics dog alerted on the trailer, officers broke the security seal and opened the trailer.  Inside, in addition to the pallets of Ivan Big Tree aloe vera leaves, officers found two duffel bags full of compressed bricks of cocaine.  The duffel bags were identical to other duffel bags used by the DTO.  The bags were at the back end of the trailer by the doors, and the pallets of aloe vera were several feet behind the duffel bags toward the front of the trailer.  The duffel bags were in plain view, and it would not be possible to look into the trailer without seeing them.  Six of the bricks were later tested and found to contain 6.006 kilograms of cocaine.

During the traffic stop, an English-speaking patrol officer engaged Rodriguez-Diaz in conversation.  However, as soon as the officer asked Rodriguez-Diaz about the cargo, Rodriguez-Diaz stated that he could not understand.  Later, at the jail, Rodriguez-Diaz told

5

an officer to "be very, very careful out there" (J.A. 458), and winked and smiled at him. The officer understood the remark as a threat.

To secure a conviction on the conspiracy charged in Count 1, the Government was required to prove beyond a reasonable doubt that: "(1) an agreement to distribute or possess cocaine with intent to distribute existed between two or more persons; (2) [Rodriguez-Diaz] knew of the conspiracy; and (3) [Rodriguez-Diaz] knowingly and voluntarily became a part of this conspiracy." *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011) (internal quotation marks omitted). "Such an agreement need not be formal and may instead be a tacit or mutual understanding between the defendant and his accomplice[s]." *United States v. Gomez-Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014) (internal quotation marks omitted).

Rodriguez-Diaz argues that the evidence was insufficient to support his convictions because there was no testimony that anyone engaged in narcotics dealing with him. However, as a conspiracy is, by its nature, "clandestine and covert," it typically must be proven through circumstantial evidence. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). "[O]ne may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence." *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) (internal quotation marks omitted). Thus, "once a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." *United States v. Allen*, 716 F.3d 98, 103 (4th Cir. 2013) (alteration and internal quotation marks omitted).

6

The evidence established a conspiracy to transport cocaine from Texas to North Carolina using couriers who were delivering legitimate cargo to other destinations, and to transport cash back to Texas via couriers. Carlos-Alfonso and Rodriguez-Diaz acted consistently with the actions of the DTO's couriers. Photographs on Rodriguez-Diaz's cell phone showed the inside of the tractor trailer loaded with the legitimate cargo and, later that evening, placed Rodriguez-Diaz near the location where the DTO loaded cocaine onto tractor trailers. Carlos-Alfonso communicated with members of the DTO as they traveled north and established a meeting place in North Carolina while they were en route. The cocaine found in the tractor trailer was packaged in the same kind of duffel bags used by the DTO. Furthermore, Rodriguez-Diaz tried repeatedly to contact the DTO safeguard on the morning of the intended rendezvous, establishing that Rodriguez-Diaz knew of the conspiracy and knowingly and voluntarily became a part of it.[2] Finally, Rodriguez-Diaz's sudden inability to understand English when the officer with whom he was speaking during the traffic stop asked about the cargo, and his threatening remark to an officer at the jail following his arrest, demonstrate consciousness of guilt that further supports his knowing participation in the conspiracy. *See United States v. Ath*, 951 F.3d 179, 187 (4th Cir.) (observing that later evidence of "consciousness of guilt" tends to prove that "the defendant

_____

[2] Rodriguez-Diaz argues that the cell phone records prove nothing because he claims there was no evidence regarding who made or received the phone calls or the subject of the phone calls. We conclude that the jury could reasonably infer that Rodriguez-Diaz used his own phone. And likewise, the jury could infer from Rodriguez-Diaz's use of his phone to communicate with members of the DTO that Rodriguez-Diaz was involved in the conspiracy.

knew he was doing something wrong or illegal, which bears on the issue of knowledge" to support the participation in an unlawful conspiracy), *cert. denied*, 140 S. Ct. 2790 (2020). We conclude that the evidence was sufficient to support Rodriguez-Diaz's conspiracy conviction.

To prove Rodriguez-Diaz's guilt of possession with intent to distribute cocaine, as charged in Count 2, the Government was required to establish beyond a reasonable doubt his "(1) possession of the controlled substance; (2) knowledge of the possession; and (3) intent to distribute." *United States v. Hall*, 551 F.3d 257, 267 n.10 (4th Cir. 2009). In addition, where the indictment charges a drug quantity that triggers increased statutory penalties, the threshold amount "must be treated as [an] element[] of [the] aggravated drug trafficking offense[]." *United States v. Promise*, 255 F.3d 150, 156 (4th Cir. 2001) (en banc); *see United States v. Tillmon*, 954 F.3d 628, 639 (4th Cir. 2019) ("To convict Tillmon of the aggravated offense, however, the Government had to introduce proof that Tillmon's § 841(a)(1) violation involved at least one kilogram of heroin.").

"To prove the crime of aiding and abetting[,] the government must show that the defendant knowingly associated himself with and participated in the criminal venture. . . . This requires evidence that the defendant be aware of the principals' criminal intent and the unlawful nature of their acts." *United States v. Kingrea*, 573 F.3d 186, 197 (4th Cir. 2009) (internal quotation marks omitted).

Possession may be actual or constructive. *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006). For constructive possession, Rodriguez-Diaz must have had knowledge

that the cocaine was in the trailer and the power to exercise dominion and control over it. *United States v. Blue*, 808 F.3d 226, 232 (4th Cir. 2015).

Although no one witnessed Rodriguez-Diaz go into the trailer, and the security seal was still intact when officers later stopped the truck, the task force saw him go behind the trailer, observed the trailer door swing open, and watched Rodriguez-Diaz come back from behind the trailer with a box of Big Ivan Tree aloe vera leaves like the ones in the tractor trailer. We conclude that the jury could reasonably infer from this evidence that Rodriguez-Diaz had bypassed the security seal and opened the back of the trailer. Rodriguez-Diaz's ability to access the sealed trailer demonstrated he had the power to exercise dominion and control over the contents of the trailer. And because the duffel bags were in plain view, the jury could infer that he was aware of them.

Rodriguez-Diaz maintains that the Government presented no evidence that he was aware that there was cocaine in the tractor trailer. However, Rodriguez-Diaz's conduct was consistent with a courier for the DTO, and we conclude that the jury could reasonably infer that he was aware that the duffel bags contained cocaine. And, again, his sudden lack of understanding English when he was asked about the truck cargo and his veiled threat to the officer at the jail further demonstrated consciousness of guilt. We conclude that the evidence was sufficient to establish that Rodriguez-Diaz knowingly possessed the cocaine. Furthermore, the large quantity of cocaine established intent to distribute. *See United States v. Wright*, 991 F.2d 1182, 1187 (4th Cir. 1993) (stating that intent to distribute may be inferred where amount of drugs found exceeds an amount normally associated with personal consumption); *see also United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005)

9

( "[I]ntent to distribute can be inferred from a number of factors, including but not limited to . . . the quantity of the drugs."). Finally, the evidence presented at trial demonstrated that the quantity of cocaine in the duffel bags exceeded the threshold five kilograms necessary to support his § 841 conviction. We therefore conclude that the evidence was sufficient to support Rodriguez-Diaz's conviction on Count 2 for possession with intent to distribute cocaine.[3]

Accordingly, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

---

[3] Likewise, we conclude that the evidence, viewed in the light most favorable to the Government, established that Rodriguez-Diaz participated in the criminal venture with Carlos-Alfonso and, hence, he aided and abetted the possession with intent to distribute five kilograms or more of cocaine.